[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13606

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JIMIKA IVORY WILLIAMS,
a.k.a. Jimika Mason,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cr-60135-RS-1

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

In 2020, a federal grand jury in the Southern District of Florida indicted Jimika Williams on two counts of theft concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A), and 18 counts of wire fraud, in violation of 18 U.S.C. § 1343. Following trial, a jury convicted Williams on all counts. The district court sentenced her to concurrent terms of 40 months' imprisonment on all 20 counts, followed by three years of supervised release. The court deferred ruling on restitution and entered the judgment.

After the judgment was entered, Williams filed the instant appeal. Later, the district court ordered Williams to pay $552,131 in restitution and entered an amended judgment reflecting that amount. Williams never filed an amended notice of appeal from the amended judgment imposing restitution.

Williams appeals all of her convictions and sentences, raising six issues: (1) whether there was sufficient evidence to convict her on all counts; (2) whether there was a material variance and/or constructive amendment of the indictment; (3) whether the district court erred in denying a new trial based on an alleged *Brady*[1] violation; (4) whether the district court erred in rejecting various proposed jury instructions; (5) whether a mistrial or new trial was warranted based on allegedly improper comments made

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

by the prosecution during closing arguments; and (6) whether the district court erred in ordering restitution. After careful review and with the benefit of oral argument, we find no merit in any of Williams's issues.

First, there was sufficient evidence to find Williams guilty beyond a reasonable doubt on all counts. As for the two counts of theft concerning programs receiving federal funds, the government presented sufficient evidence for the jury to find beyond a reasonable doubt that (1) Williams was an agent of Paramount Charter School; (2) Paramount received in excess of $10,000 in federal assistance during the relevant one-year periods charged in the indictment; (3) Williams embezzled, stole, obtained by fraud, or otherwise without authority knowingly converted for her own use money owned by or under the care, custody, or control of Paramount; and (4) the value of the property was more than $5,000. *See* 18 U.S.C. § 666(a)(1)(A); *United States v. Keen*, 676 F.3d 981, 989 (11th Cir. 2012). And as for the 18 wire fraud counts, contrary to Williams's arguments, the government presented sufficient evidence that Williams intended to defraud—*i.e.*, "obtain, by deceptive means, [money] to which [she was] not entitled"—the entities listed in the indictment. *United States v. Waters*, 937 F.3d 1344, 1352 (11th Cir. 2019); *see also United States v. Machado*, 886 F.3d 1070, 1083 (11th Cir. 2018) ("[A] jury may infer the intent to defraud from the defendant's conduct and circumstantial evidence. Evidence that the defendant profited from a fraud may also provide circumstantial evidence of the

intent to participate in that fraud." (citation and quotation omitted)).

Second, there was no constructive amendment of, or variance concerning, the indictment. Instead, the evidence introduced at trial was consistent with the indictment's broad, general terms and was not prejudicial to Williams. *See United States v. Gold*, 743 F.2d 800, 813 (11th Cir. 1984) ("[W]hen the indictment charges a violation of a statute in general terms, proof of acts of the kind described, although those acts are not specifically mentioned in the indictment, does not constructively amend it, at least absent a demonstration that this was, or might have been, prejudicial to the defendant." (quotation omitted)); *United States v. Goldstein*, 989 F.3d 1178, 1198–99 (11th Cir. 2021) ("A fatal variance exists only where the evidence at trial proves facts *different* from those alleged in the indictment, as opposed to facts which, although not specifically mentioned in the indictment, are entirely consistent with its allegations." (emphasis in original) (quotation omitted)).

Third, the government's alleged failure to disclose to Williams the allegedly exculpatory May 24, 2017 letter written by Jody Perry did not constitute a *Brady* violation because Williams failed to show that she could not have obtained the letter with "reasonable diligence." *United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002). Perry, after all, was a witness for the defense. Moreover, Williams failed to show that the letter's contents undermined confidence in the outcome of her trial. *See Kyles v.*

*Whitley*, 514 U.S. 419, 434 (1995) (explaining that a *Brady* violation occurs only where the suppressed evidence "undermines confidence in the outcome of the trial" (quotation omitted)).

Fourth, the district court did not commit any error in instructing the jury. As to the instructions about the elements of the charged offenses, the district court indeed adopted some of the instructions proposed by Williams. As to those that the district court did not adopt, the court did not abuse its discretion in declining to adopt them given that the existing instructions either accurately stated the law, did not improperly guide the jury, or both, and given that Williams's proposed instructions were not "so important that failure to give [them] seriously impaired [Williams's] ability to defend [herself]." *United States v. Gumbs*, 964 F.3d 1340, 1347 (11th Cir. 2020) (quotation omitted); *see also United States v. Fulford*, 267 F.3d 1241, 1245 (11th Cir. 2001) ("[I]f [jury] instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instruction."); *Fulford*, 267 F.3d at 1245 ("We will reverse the district court because of an erroneous instruction only if we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." (quotation omitted)).

Fifth, the government's comments at closing argument—even assuming the comments were improper—do not call for a new trial because the two comments were isolated and accompanied by curative instructions from the district court. *See United States v. Woods*, 684 F.3d 1045, 1065 (11th Cir. 2012) ("Reversal

on the basis of prosecutorial misconduct requires that the misconduct be so pronounced and persistent that it permeates the entire atmosphere of the trial." (quotation omitted)); *United States v. Feldman*, 936 F.3d 1288, 1303 (11th Cir. 2019) (declining to order a new trial due to improper remarks where, as here, the district court gave curative instructions regarding the remarks and there was "sufficient evidence of guilt independent of the challenged remarks").

And sixth, Williams's challenge to the district court's restitution order must be dismissed. As the government points out, Williams failed to file an amended notice of appeal from the district court's entry of the amended judgment imposing restitution. As a result, we lack the power to review the district court's restitution order. *Manrique v. United States*, 581 U.S. 116, 121–22, 125 (2017) ("[A] defendant who wishes to appeal an order imposing restitution in a deferred restitution case must file a notice of appeal *from that order*. Because [the defendant] failed to do so, and the Government objected," the court's "duty to dismiss the appeal was mandatory." (emphasis added)).

For these reasons, we affirm Williams's convictions and sentences, and we dismiss her appeal in part as to her restitution challenge.

**AFFIRMED IN PART AND DISMISSED IN PART.**